IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Linda L. Converse,                              :

               Plaintiff        :        Civil Action 2:08-cv-461

       v.                                       :        Judge Holschuh

Michael J. Astrue,                             :        Magistrate Judge Abel
Commissioner of Social Security,
               Defendant         :


## REPORT AND RECOMMENDATION

Plaintiff Linda L. Converse brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her applications for social security disability and supplemental security income benefits.

This matter is before the Magistrate Judge for a report and recommendation on the

administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Linda L. Converse maintains that she became dis-

abled at age 56 by anxiety, depression, panic attacks, an inability to deal with people

and problems with her feet.  (R. 243-255). She is a high school graduate who has worked

as a library assistant, cashier, sales clerk and office clerk.  The administrative law judge

found that Plaintiff had no exertional limitations. Her non-exertional impairments pre-

cluded more than superficial contact with supervisors, coworkers and the public.  Based

on those limitations, the administrative law judge concluded that Converse retained the

ability to perform her past relevant work as a billing clerk and a warehouse clerk.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge's finding of Plaintiff's Mental RFC is not supported by the substantial evidence of record.

- The administrative law judge failed to properly evaluate the medical opinions in the record.
- The administrative law judge failed to have a medical expert present at the hearing.

**Procedural History.** Plaintiff filed her application for social security supplemental income on May 26, 2004 and her application for disability insurance benefits on June 12, 2004, alleging in both applications that she became disabled on November 1, 2002, at age 56. (R. 44-46.) The applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On June 28, 2007, Administrative law judge Paul R. Armstrong held an initial hearing via video conference at which Plaintiff, represented by counsel, appeared and testified. (R. 239-75.) On July 23, 2007, Administrative law judge Armstrong issued a decision finding that Converse was not disabled within the meaning of the Act. (R. 16-23.) On April 9, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 4-6.)

**Age, Education, and Work Experience.** Plaintiff, Linda L. Converse was born October 5, 1946. (R. 44.) She was 60 years old the time of the administrative hearing. She has a high school education. (R. 256.) She had past work experience as a library assistant, secretary, cashier, sales and office clerk. (R. 57-64.)

**Plaintiff's Testimony.**  At the June 28, 2007 hearing, Plaintiff testified that she last worked in 2002, she was working in the office of a small dumpster company. (R. 248.)  Plaintiff testified that the main reason she cannot work is she cannot drive, she is too scared or too nervous. (R. 251.)  She has panic attacks and cannot be in a public place when they occur. (R. 252.)  Plaintiff testified if she could be by herself, she could do her past job. (R. 258.)  Her nerves began getting worse in 2002, following leaving her job and getting divorced after 35 years of marriage (R. 250, 260.) When she has a panic attack, she starts sweating and "my heart starts jumping around." She feels like she is going to throw up and pass out. (R. 261.)

**Vocational Expert's Testimony.** The vocational expert present at the hearing was asked to assume an individual with Plaintiff's age, education and work experience with the limitations of work requiring no more than superficial contact with supervisors, co-workers, and the general public.  The vocational expert testified that this person could perform her past work as a billing clerk and warehouse attendant.  (R. 267.)  With further hypotheticals involving limiting the individual to light, unskilled work with no more than superficial contact would still allow performance of the warehouse attendant job. (R. 268.)  If the individual could not get out of her house and missed two days of work, it would eliminate those positions. *Id.*

**Medical Evidence of Record.**  The relevant medical evidence of record is  summarized as follows:

 Joseph Ginty, M.D. Treatment notes reflect Dr. Ginty has treated Plaintiff

since at least November 1999. (R. 199.)  Records from 2001 show Plaintiff suffered from anxious affect, depression and palpations. (R. 195-96.) In May 2005, Plaintiff reported panic attacks. She noted GI upset, smothering sensations and palpations. She denied insomnia, stated her appetite and mood were good. *Id.* On June 13, 2005, she reported a decrease in panic attacks and was continued on Lexapro. (R. 108.)  Plaintiff reported increased symptoms, on November 18, 2005.  She had not taken medication. Her affect was anxious. Medications were resumed at that time. (R. 107.)

James A. Merk, M.D./Lancaster Fairfield Health Clinic.    Treating family practice physician, Dr. Merk performed a physical residual functional capacity assessment in 2003. He determined that Plaintiff is limited to standing, walking and sitting four hours a day.  Dr. Merk opined that Plaintiff was capable of returning to full-time work with restrictions to frequent bending, squatting, crawling, and climbing and she is limited to lifting no more than 20 pounds frequently. (R. 155-156.)

Melissa D. Harris, M.D./Tri-County Family Physicians. Plaintiff treated at Tri-County Family Physicians from November 2001 through April 2002. She was diagnosed with depression.  Plaintiff had complaints of difficulty sleeping, an inability to concentrate and weight gain. Dr. Harris discussed with Plaintiff her returning to her counselor although she seemed reluctant to do so. They also discussed seeking help from church, but Plaintiff reported that she was a loner who preferred not to be around  people. It was also reported, she had a long history of physical abuse. Treatment notes further indicated fluctuating occurrences of panic attacks, which depended on her response to

4

medication. (R. 183-188.)

Marc E. W. Miller, Ph.D.  Plaintiff underwent a psychological evaluation by Dr. Miller, a state agency psychologist in August 2004. Plaintiff reported she was married for 35 years and that her marriage involved physical and mental abuse.  She suggested that she lost everything in the divorce, but lives off a small retirement. Plaintiff further reported experiencing episodes of hyperventilation, difficulty sleeping, a fear of dying, dizziness, sweats, poor self esteem, nausea, racing thoughts, poor motivation, and chest tightness.  She also reported fearing crowds, people, and riding or driving in automobiles.  She complained of weekly panic attacks, anxiety, depression, and remote history of suicidal thoughts.  She underwent mental health treatment in 2001 for panic attacks, but had not attended since 2001.

During the mental status examination, Dr. Miller observed that plaintiff tended to be anxious.  She spoke in sentences no longer than 2-8 words in length, and sporadically made facial grimaces.  Intelligence was estimated as low average, but some problems with short term recall were observed and concentration was only fair.  which Dr. Miller indicated "[i]n all likelihood, this is due to her anxiety level."  Her ability to care for herself was rated as good.  Dr. Miller diagnosed plaintiff with a panic disorder without agoraphobia and a moderate generalized anxiety disorder.  Dr. Miller assigned a global assessment of functioning level (GAF) of 55.

Dr. Miller found plaintiff's ability to interact with co-workers, supervisors and the public to be moderately impaired, as was her ability to deal with the stress and

pressure in a work setting due to anxiety. Her persistence and ability to complete tasks was mild to moderately impaired and her ability to maintain attention and concentration was mildly impaired. (R. 177-180.)

Ellen Marshall , M.S.W./Charles Snyder, M.D./Mid-Ohio Psychological Services. At Plaintiff's initial psychiatric evaluation on October 13, 2005, she reported that, "I don't want to go anywhere or do anything." She felt nervous a lot. She also reported having panic attacks about 2-3 times per month.  Plaintiff further reported childhood physical and emotional abuse from her mother and emotional abuse from her husband. She also noted problems sleeping.  Mental status examination showed a small amount of irritability on a few occasions, blunted affect, somewhat constricted mood, anxious mood that dissipated during interview, and reported nervousness. Therapist Marshall diagnosed depressive disorder not otherwise specified (nos) and panic disorder without agoraphobia.  Thereafter, a therapeutic relationship was established. (R. 117-19.)

Plaintiff continued treatment through 2007, with sporadic breaks in treatment. (R. 122, 126, 131, 224, 226, 227.)

On May 22, 2006, Plaintiff was diagnosed with depressive disorder (nos), panic disorder without agoraphobia, and post traumatic stress disorder, and assigned a GAF of 58 (R. 128.). On May 30, 2006, Therapist Marshall noted that Plaintiff constantly finds herself focusing on "what ifs" as in "what if this bad thing happens." (R. 148).

On June 13, 2006, Plaintiff noted becoming anxious in day to day social relationships. She brought in a form from her attorney and asked Therapist Marshall to com-

plete it. "Linda does feel that she could not possibly manage a job at this time, but at the same time she does not feel that her anxiety and depression are serious disabling conditions. It is very difficult to talk with her about how these two beliefs contradict one another." (R. 147.)  Therapist Marshall  completed a Mental residual functional capacity form that day.  She found that Plaintiff had markedly limited ability to accept instruction form or respond appropriately to criticism from supervisors or superiors and moderately limited ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes and to tolerate customary work pressures.  Therapist Marshall concluded that Plaintiff's condition would likely deteriorate under the stress of a workplace atmosphere. These findings were based on the frequency and severity of her panic attacks, her anxiety and her difficulty managing day-to-day social relationships. (R. 232-233.)

On June 22, 2006, Therapist Marshall noted Plaintiff's depressive symptoms continued, although she was not suicidal or hallucinatory. (R. 144.)  Her Lexapro dosage was increased by psychiatrist, Charles Snyder, M.D.  On July 20, 2006, Plaintiff reported improvement.  She had not been having panic attacks and was sleeping better. (R. 142.)

On August 8, 2006, Plaintiff reported being less depressed.  Her anxiety was managed successfully with medications. (R. 140.)  On August 28, 2006, she underwent a biopsy, but reported having a panic attack after the biopsy.  The attack lasted 2 minutes, then she was able to calm herself down. (R. 138.)

On September 11, 2006, Therapist Marshall noted Plaintiff seemed a bit down and in a subdued mood. She reported no recent panic attacks and her behavioral functioning was appropriate. (R. 137.)

On October 26, 2006, Plaintiff reported to Dr. Snyder that her anxiety had reduced dramatically, allowing her to participate in more activities. Her medications included Inderal, Lexapro and Xanax. (R. 134.)

On December 22, 2006, Dr. Snyder reported Converse presented "very cheerful." Her medications were helping her quite a bit. Her friends remarked that they could see a big difference in her. Her medications, Inderal, Xanax and Lexapro, had made her stable for several months. She experienced no adverse effects on medication. (R. 228)

June 11, 2007 treatment notes indicated Converse had been attending therapy sessions on an average of once a month. She reported medication compliance with some positive results. She described her depression as fairly resolved with medication and her anxiety at a 3-4/10. She did have a panic attack the week prior. (R. 219.)

Bruce J. Goldsmith, Ph.D./Douglas J. Pawlarczyk, Ph.D. On September 15, 2004, Dr. Goldsmit reviewed the record for the state agency. He found that Plaintiff would be only mildly restricted in her activities of daily living, moderately limited in main-taining social function, and moderately limited in maintaining concentration, persist-ence or pace. (R. 171.) Plaintiff had moderate impairments in her ability to understand or remember detailed instructions, her ability to work in coordination

with or in prox-imity to other people and her ability to interact appropriately with the general public. Dr. Goldsmith also found Plaintiff was significantly impaired in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Goldsmith concluded that Plaintiff should be able to concen-trate and persist to complete most activities during a work day. (R. 161-76.) On Dec-ember 20, 2004, Dr. Pawlarczyk, a psychologist, reviewed the record for the state agency and agreed with Dr. Goldsmith's assessment. (R. 161, 176.)

Patricia K. Ostrander, Ph.D. Plaintiff Converse was assessed by Dr. Ostrander for the Fairfield County Department of Jobs and Family Services on April 30, 2007. She reported that she was afraid to drive and also to be a passenger in a car. She did not want to leave her house. She reported severe panic attacks lasting up to 35 minutes. Mental status examination was normal except for some situational anxiety. Plaintiff further reported being very nervous around people struggling dealing with cowork-ers. Dr. Ostrander diagnosed a severe panic disorder and also noted depression, anxiety and problems sleeping. Dr. Ostrander reported that Converse's psychological problems forced her to remain home, only leaving when absolutely necessary. Intelli-gence testing indicated Converse was functioning in the low average range of intelli-gence. Dr. Ostrander concluded that Plaintiff's "anxiety attacks are significant enough that while she may be able to obtain employment, she would be unlikely to maintain it

9

due to her inability to drive without having an attack to get to work." (R. 210-215.)

**Administrative Law Judge's Findings.** The administrative law judge found

that:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act through June 30, 2007.

2. The claimant has not engaged in substantial gainful activity since November 1, 2002 (20 CFR §§ 404.1520(b) and 416.920(b)).

3. The claimant has the following severe impairment: panic attacks (20 CFR §§ 404.1520(c) and 416.920(c)). Depression is not a severe impairment within the meaning of the Regulations.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5. Upon careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) for no more than superficial contact with supervisors, co-employees, and the general public. She has no exertional limitations.

6. The claimant is capable of performing past relevant work as a billing clerk and warehouse worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR §§ 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from November 1, 2002 through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(R. 18-22).

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id. LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge's mental residual functional capacity finding is not supported by the substantial evidence of record. Plaintiff further contends the administrative law judge failed to properly weigh the treating and consulting sources that would support a finding of disability. Plaintiff also contends a medical expert should have been present at the hearing.

Assessing Residual Functional Capacity: Legal Standard.

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases

11

are decided at an administrative hearing. *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). 20 C.F.R. §§ 404.1546; 404.1527(e)(2).

A claimant's residual functional capacity is an assessment of physical and mental work abilities – what the individual can or cannot do despite his or her limitations. 20 C.F.R. §§404.1545(a), 416.945(a); *see Howard v. Commissioner of Social Sec.,* 276 F.3d 235, 239 (6th Cir. 2002). "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis.... A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p[1] (emphasis in original)(footnote omitted) .

The Regulations charge Administrative law judges and the Commissioner with the responsibility for assessing a claimant's residual functional capacity. *See* 20 C.F.R. §§404.1527(e)(2), 416.927(e)(2). The Regulations distinguish between the assessment of a claimant's residual functional capacity versus a medical source opinion about a claimant's work abilities.

The Commissioner explains, through her Rulings, that residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96-8p. In contrast,

_____

[1] *See* http://www.ssa.gov/OP_Home/rulings/rulings.html.

the Commissioner more generally considers medical source statements as "medical opinions submitted by acceptable medical sources, including treating sources and consulting examiners, about what an individual can still do despite a severe impairment(s)...." Social Security Ruling 96-5p. The Commissioner further explains the distinction through her Rulings as follows:

> From time-to-time, medical sources may provide opinions that an individual is limited to 'sedentary work,' 'sedentary activity,' 'light work,' or similar statements that appear to use the terms set out in our regulations and rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of our definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

Social Security Ruling 96-5p.

Medical Source Opinions: Legal Standard. A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical

adviser, Congress specifically amended the Social Security Act in 1967 to provide that

to be disabling an impairment must be "medically determinable." 42 U.S.C. § 423 (d)

(1) (A). Consequently, a treating doctor's opinion does not bind the Commissioner

when it is not supported by detailed clinical and diagnostic test evidence. *Varley v.*

*Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v.*

*Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236

(6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975), 20 C.F.R.

§§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner's regulations provide that she will generally "give more

weight to the opinion of a source who has examined you than to the opinion of a

source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating

source's opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in

your case record, we will give it controlling weight. " 20 C.F.R. § 404.1527(d)(2).  In

determining the weight to assign a treating source's opinion, the Commissioner

considers the length of the relationship and frequency of examination; nature and

extent of the treatment relationship; how well-supported the opinion is by medical

signs and laboratory findings; its consistency with the record as a whole; the treating

source's specialization; the source's familiarity with the Social Security program and

understanding of its evidentiary requirements; and the extent to which the source is

familiar with other information in the case record relevant to decision. *Id.*  Subject to

these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify." *Id.*  When the treating source's opinion "is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's [opinion] more weight than we would give it if it were from a non-treating source." 20 C.F.R. §404.1527(d)(2)(i).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically accept-

able clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner must make the final

decision on the ultimate issue of disability. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Discussion.  In determining Converse's residual functional capacity, the administrative law judge primarily relied on the opinions of Drs. Goldsmith and Pawlarczyk, state agency reviewing psychologists. (R. 21.)  Plaintiff argues that "Every examining and treating source has described in clear detail not only the diagnoses of plaintiff's condition, but that she suffers from far more limitations." *See* Doc. 11 at 9.

Plaintiff characterized the state agency reviewing psychologists as favorable opinions, but as noted above, Dr. Goldsmith concluded that Plaintiff should be able to concentrate and persist to complete most activities during a work day.  (R. 161-76.)

In rejecting Therapist Marshall's and Dr. Merk's opinions, the administrative law judge specifically determined that their opinions were inconsistent with the other evidence of record.  From a review of the record as a whole, the Magistrate Judge concludes that the administrative law judge–who is the finder of fact–had an adequate basis for rejecting Therapist Marshall's and Dr. Merk's opinions.

With respect to Therapist Marshall's opinion, the administrative law judge gave little weight to her opinion that Converse had markedly limited ability to accept instruction from or respond appropriately to criticism from supervisors or superiors, was moderately limited ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, and moderately impaired

ability to tolerate customary work pressures.  (R. 232-233.)  The same day Therapist

Marshall completed the mental residual functional capacity questionnaire, she met

with Plaintiff and noted "Linda does feel that she could not possibly manage a job at

this time, but at the same time she does not feel that her anxiety and depression at

serious disabling conditions.  It is very difficult to talk with her about how these two

beliefs contradict one another." (R. 147.)  To further support the administrative law

judge's decision, treatment records from Therapist Marshall's office reflect sporadic

breaks in treatment (R. 122, 126, 131, 224, 226, 227); she reported improvement when on

medications; she had not been having panic attacks and was sleeping better (R. 142);

she reported being less depressed and that her anxiety was managed successfully with

medications (R. 140);  her anxiety had reduced dramatically, allowing her to participate

in more activities (R. 134);  and she described her depression as fairly resolved with

medication and her anxiety at a 3-4/10. (R. 219.)  Given these facts, the administrative

law judge had an adequate basis for rejecting Therapist Marshall's opinion.

Turning to Dr. Merk's opinion, the administrative law judge gave little weight

to his opinion that Converse was limited to standing and/or walking 4 hours, sitting 4

hours, and lifting 20 pounds frequently since it is inconsistent with the medical record.

(R. 155-56.)  That conclusion is supported by substantial evidence.  Dr. Merk only

addressed Converse's physical limitations for which she is not alleging disability.

Moreover, he did not support his opinion on this issue of disability with clinical

findings and test results.

As to Dr. Ostrander's opinion, Plaintiff argues the administrative law judge did not evaluate her opinion in any way or offer any inclination as to how much weight, if any, he gave to her opinion. *See* Doc. 11 at 16. Dr. Ostrander offered two opinions, one was the April 30, 2007 report wherein Dr. Ostrander concluded that Plaintiff's "anxiety attacks are significant enough that while she may be able to obtain employment, she would be unlikely to maintain it due to her inability to drive without having an attack to get to work." (R. 210-215.) This opinion seems to primarily deal with Plaintiff's attendance and that is not a functional limitation. This Court, concludes, therefore, that while the administrative law judge did not specifically list Dr. Ostrander 's name, he did discuss her opinion (R. 20.), such error is harmless. The second opinion was an undated report, not before the administrative law judge, but submitted to the Appeals Counsel. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Contrary to Plaintiff's contentions the administrative law judge provided sufficient information to show that he weighed medical source opinions as the Regulations required. The Administrative law judge correctly set out the legal criteria applicable under the treating physician rule. (R. 21.) He applied the factors, specifically the consistency factor to determine Plaintiff was not disabled.

In further in support of plaintiff's residual functional capacity, the administrat-

ive law judge noted Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms. However, her statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible. (R. 21.) Plaintiff had panic attacks for years, but worked all her life steady. *Id.* She has never been psychiatrically hospitalized; and medications effectively control her symptoms. *Id.* The Court notes that Plaintiff did not raise the issue of the administrative law judge's findings as to her credibility in her Statement of Specific Errors. Plaintiff has, therefore, waived that claim of error. *Cf., Heston v. Commissioner of Social Security,* 245 F.3d 528 (6th Cir. 2001).

The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

Even when there is substantial evidence supporting a finding of disability the Court must affirm the Commissioner's decision when it, too, is supported by substantial evidence. There is "'a zone of choice within which the decision makers can go either way, without interference by the courts.'" *Mullen v. Secretary of Health and*

*Human Services*, 800 F.2d 535, 548 (6th Cir. 1986)(*en banc*)(citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The administrative law judge, not the Court, is the trier of fact. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

In close cases where there are facts supporting both the plaintiff's and the Commissioner's view of the evidence, the Commissioner's decision must be affirmed. *Smith v. Chater*, 99f3d 780, 781 (6th Cir. 1996). It is not the Court's role to resolve conflicts in the evidence or to determine the credibility of the claimant. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). The decision of the Commissioner must be affirmed so long as it is consistent with the requirements of the law and is supported by substantial evidence.

Finally, plaintiff argues that the administrative law judge should have secured the assistance of a medical expert because additional medical records were submitted which would have identified additional limitations than those of the opinions of Dr. Goldsmith, Dr. Pawlarczyk and Dr. Miller, opinions the administrative law judge partially relied upon in his decision.

The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales*, 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the

nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii). The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an ALJ may obtain ME opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." *Id.* The operations manual indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
- the ALJ is assessing a claimant's failure to follow prescribed treatment;
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;
- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the

nature of an impairment and identify any medically contraindicated
activities; or

- the ALJ desires expert medical opinion regarding the onset of an
impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's decision

whether a medical expert is necessary is inherently discretionary. An administrative

law judge abuses her discretion only when the testimony of a medical expert is "re-

quired for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's

allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th

Cir. 1989).

Here the administrative law judge did not abuse his discretion. His decision

included a fair recitation of the evidence and included thorough, well-documented

findings supporting the conclusion that plaintiff Converse was not disabled. (R. 16-23.)

From a review of the record as a whole, I conclude that there is substantial

evidence supporting the administrative law judge's decision denying benefits. Accord-

ingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security

be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for sum-

mary judgment be **DENIED** and that defendant's motion for summary judgment be

**GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

ten (10) days, file and serve on all parties a motion for reconsideration by the Court,

specifically designating this Report and Recommendation, and the part thereof in

20 question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

　s/Mark R. Abel　　　　　　
United States Magistrate Judge